| | |
|---|---|
| HAZEL CRAMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) No. 3:16-cv-491-HBG |
| OAK HAVEN RESORT, INC., STEVEN | ) |
| MARSHALL, and BETTY W. MARSHALL, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM AND ORDER</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the
Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,
including entry of judgment [Doc. 23].

Now before the Court is Defendant Oak Haven Resort, Inc.'s Motion for Summary
Judgment as to Second Amended Complaint [Doc. 82], Steven Marshall and Betty Marshall's
Motion for Summary Judgment as to Plaintiff's Second Amended Complaint [Doc. 88], and
Plaintiff's Objection to Steven and Betty Marshall's Motion for Summary Judgment as to
Plaintiff's Second Amended Complaint [Doc. 90].[1]  The Motions have been fully briefed and are
ripe for adjudication.  Accordingly, for the reasons explained below, the Court finds Defendants'
Motions [**Docs. 82 and 88**] are **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's
Motion [**Doc. 90**] is **DENIED.**

---

[1] The Court observes that Plaintiff also filed an Objection to Defendant Oak Haven Resort,
Inc.'s Motion for Summary Judgment as to Second Amended Complaint.  [Doc. 86].  This
Objection, however, was not filed as a Motion.

# I.     BACKGROUND

The instant lawsuit arises out of an incident that occurred on August 14, 2015, at Oak Haven Resort in Sevierville, Tennessee. [Doc. 76 at ¶ 7]. Specifically, Plaintiff alleges that she sustained injuries when she tripped over Steven and Betty Marshall's dog, while staying at a cabin owned by Oak Haven Resort, Inc. ("Oak Haven"). [*Id.*]. The following facts are taken from the parties' filing and the Court's previous Memorandum and Order [Doc. 71].[2]

Steven and Betty Marshall ("Marshalls") own property that is adjacent to Oak Haven. [Doc. 81-1 at 3-4]. The Marshalls own a thirty to thirty-five pound dog named, "Bear." [*Id.* at 3]. In 2015, the Marshalls did not take any steps to restrain Bear. [*Id.*]. Oak Haven was aware that Bear sometimes came onto its property. [Doc. 82-3 at 7]. Accordingly, to Chuck McCarter, Oak Haven's managing partner, the dog's presence on Oak Haven's property did not raise any concern. [*Id.*]. The Marshalls kept a collar on Bear that stated, "Please do not feed this dog." [Doc. 81-1 at 3]. Steven Marshall explained that the collar was placed on Bear because people at Oak Haven would feed her and she would not come home. [*Id.*]. Prior to the alleged incident, Bear had never caused any problems at Oak Haven. [Doc. 82-3 at 8].

On August 14, 2015, Plaintiff and several members of her family arrived at Oak Haven at approximately 10:00 a.m. [Doc. 41-1 at ¶ 31, Doc. 40 at 2, Doc. 45-1 at 1]. Plaintiff testified that when she arrived at the cabin, Bear was not there. [Doc. 39-3 at 49]. In addition, Plaintiff testified that she had stayed at Oak Haven before and that she had never seen Bear prior to August 14, 2015. [*Id.* at 45]. Sometime later, on August 14, 2015, Plaintiff saw Bear lying on the front porch of the

---

[2] The Court notes that it ruled on Defendants' previous motions for summary judgment on January 30, 2018. [Doc. 71]. After reviewing the instant filings, it appears to the Court that the relevant facts have not changed from the Court's previous ruling, and thus, the Court finds it appropriate to rely on such facts, unless otherwise noted.

cabin in the doorway. [*Id.* at 50]. Plaintiff went back inside the cabin and called the front desk to inform Oak Haven that a dog was lying on the porch of the cabin. [*Id.*]. Plaintiff stated that the employee advised Plaintiff not to feed the dog. [*Id.* at 51]. In addition, Plaintiff testified that the employee stated that the dog would go home and that the dog liked to visit. [*Id.*]. Plaintiff testified that she did not ask Oak Haven to remove the dog. [Doc. 82-6 at 114].

Plaintiff's daughter, Collen Frick, arrived at the cabin around noon and saw Bear sitting or lying on the porch at the front door. [Doc. 39-4 at 29]. Plaintiff advised Frick that she had already called the front office about the dog and not to feed or touch it and that the dog would just go home. [*Id.* at 28]. A few hours later around 2:00 p.m., or 3:00 p.m., Frick went back outside, and Bear was still on the front porch. [*Id.* at 34].

Plaintiff and her family left the cabin in the afternoon to eat at a restaurant. [Doc. 41-1 at ¶ 37, Doc. 45-1 at 2, Doc. 40 at 4]. Frick testified that the family returned at approximately 6:00 p.m. or 6:30 p.m. [Doc. 39-4 at 39]. Frick continued that when it was almost dark, she and Joe Cramer were sitting in a swing on the porch when Bear arrived. [*Id.* at 43]. Bear went in front of Mr. Cramer and Frick and lay down on the porch. [*Id.* at 44]. Frick testified that Bear gave her and Mr. Cramer a "pet me look." [*Id.*]. Bear then lay down on the front of the porch near the railing. [*Id.*].

 Frick continued that Bear did not move before Plaintiff fell. [*Id.*]. She continued that Plaintiff fell somewhere between the swing and the door of the hot tub, which is also where Bear was lying. [*Id.* at 45-46]. Frick stated that from where she was sitting, she could not see Bear because Mr. Cramer was between her and Bear. [*Id.*]. Frick continued that she saw her mother walk toward Bear and that she tripped over Bear. [*Id.* at 48]. She explained that Plaintiff was coming out of the door and tripped over Bear. [*Id.*]. She stated that she did not see Plaintiff's feet

hit Bear and that she (Frick) just saw Plaintiff fall. [*Id.* at 48-49]. She stated that Bear stood up. [*Id.* at 49]. When asked whether there was anything that the dog did to cause Plaintiff's fall, Frick testified, "No, but it was too dark. You couldn't see Bear because it was too dark." [*Id.* at 50]. She explained that the porch lights were turned off and that it was "like dusk" outside. [*Id.*]. She testified that Plaintiff did not have to walk around anything on the porch, and Plaintiff was able to take a "straight shot." [*Id.* at 66-67]. Frick testified that after the fall, "they" shoved Bear away, and Bear took off after all the racket. [*Id.* at 57]. Frick did not see Bear again. [*Id.* at 53, 56].

Plaintiff testified that she was on the back porch when Frick and Mr. Cramer were sitting in the swing on the front porch. [Doc. 41-4 at 55]. Plaintiff stated that she was coming out the screen door and saw Frick and Mr. Cramer. [*Id.* at 62, 74]. She did not have any trouble opening the door as she was coming out. [*Id.* at 64]. She walked past four chairs and a table. [*Id.* at 70]. After opening the door and walking out towards Mr. Cramer and Frick, the next thing Plaintiff recalled was lying there holding her leg, stating, "Oh my God, oh my God." [*Id.* at 79]. She does not recall seeing the dog before or after she fell. [*Id.*]. She was not sure why she did not see the dog, but she knows the dog was there because when she asked what happened, Mr. Cramer and Frick said that it was the dog. [*Id.* at 78, 81].

As demonstrated above, the facts in this case are straightforward. Plaintiff alleges she tripped over Bear and the question is who is liable for Plaintiff's injuries: Plaintiff (for tripping over the dog), Oak Haven (for owning the premises where Plaintiff was injured and allegedly allowing the dog on the premises), or the Marshalls (the dog's owners).

## II.      POSITIONS OF THE PARTIES

As mentioned above, both Defendants request summary judgment. The Court will summarize the Motions for Summary Judgment in the order in which they were filed.

### A.     Oak Haven's Motion for Summary Judgment

Oak Haven asserts that it is not liable for Plaintiff's injury under Tennessee common law. Oak Haven states that liability for injuries caused by dogs requires proof that a defendant owned or harbored the dog.  Oak Haven argues that it does not own the dog, nor does it regularly keep the dog on its property.  Further, Oak Haven states that every Tennessee case regarding an injury caused by a dog, regardless of the plaintiff's theory of liability and the manner in which the injury occurred, has held that a plaintiff must prove that the dog had a dangerous propensity of which the defendant was aware.  Oak Haven states that no Tennessee case has ever held that an animal is a condition of the property akin to a spilled substance or a cracked sidewalk.  Oak Haven submits that Bear had never tripped anyone before and that there is no evidence that at the time of Plaintiff's accident Bear was doing anything other than lying motionless on the porch.

Further, Oak Haven asserts that it cannot be held liable under Tennessee Code Annotated § 44-8-413.  First, Oak Haven argues that Plaintiff failed to allege that it violated § 44-8-413 in the Second Amended Complaint.  In addition, Oak Haven explains that under present Tennessee law, only owners have a legal duty regarding dogs.  Oak Haven states that it is not the "owner" of the dog as defined in Tennessee Code Annotated § 44-8-413(e)(1).  Further, Oak Haven submits that pursuant to *Searcy v. Axley*, No. W2017-00374-COA-R3-CV, 2017 WL 4743111 (Tenn. Ct. App. Oct. 19, 2017), there is no common law cause of action for injury caused by a dog in Tennessee and that all such actions must be brought pursuant to the statute.

Plaintiff filed an Objection [Doc. 86], arguing that Oak Haven's Motion is untimely. Plaintiff asserts that the dispositive motion deadline was November 15, 2017, and that the Amended Scheduling Order did not extend the deadline to file dispositive motions.

5

In addition, Plaintiff filed a Response [Doc. 86-1], arguing that she has sufficiently pled a cause of action against Defendant Oak Haven and that a jury should decide this case on the merits. Plaintiff states that Oak Haven has failed to show that it cannot be found liable for her injuries as a matter of law. Plaintiff asserts that Oak Haven was negligent by knowingly allowing the dog to roam free and unrestricted on its property. Plaintiff insists that the jury should decide whether Oak Haven's failure to act was negligent. Plaintiff states that as a commercial resort owner/operator, Oak Haven was in a special relationship with Plaintiff and owed her a continuing and affirmative duty to act for her protection. Further, Plaintiff states that Oak Haven misunderstands or misstates the law concerning injuries caused by dogs. Plaintiff acknowledges that Oak Haven does not own Bear. Plaintiff states, however, that Bear is not a stray dog and did not merely wander onto the premises.

Further, Plaintiff states that Oak Haven can be found liable under Tennessee Code Annotated § 44-8-413 because it habitually allowed the dog to come onto its property. Plaintiff maintains that her cause of action against Oak Haven is one of premises liability, but that in addition, she also alleges a claim under Tennessee Code Annotated §§ 44-8-408 and 413, if the jury determines that Oak Haven allowed the dog to habitually come onto its property. Finally, Plaintiff asserts that the Court has already ruled on the issues set forth in Oak Haven's Motion, and therefore, the Motion is untimely, redundant, and serves only to harass, mislead, and needlessly increase the costs of the litigation.

Oak Haven filed a Reply [Doc. 95], asserting that the deadlines in the Amended Scheduling Order are no longer viable because Plaintiff moved for a continuance because of her own inability and failure to meet the deadlines. Oak Haven states that the Second Amended Scheduling Order did not set a deadline for dispositive motions. Oak Haven states that after it filed its original

motion for summary judgment, the Tennessee Court of Appeals issued its decision in *Searcy* and held that Tennessee Code Annotated § 44-8-413 abrogated the common law for injuries caused by dogs. Oak Haven states that Plaintiff's Second Amended Complaint alleges claims/theories to which the *Searcy* case applies. Further, Oak Haven argues that Plaintiff's arguments are outside the scope of her pleadings. Oak Haven asserts that during the pendency of this litigation, Plaintiff has represented that her claim against Oak Haven is for premises liability. Oak Haven states that for the first time, Plaintiff argues that Oak Haven is liable for failing to protect her from the Marshalls' alleged violations of statutes and/or ordinances because of a special relationship as an innkeeper. Oak Haven asserts that Plaintiff is bound by her pleadings.

In addition, Oak Haven states that Plaintiff's argument that it had a duty to protect her as an innkeeper is unfounded and erroneous. Oak Haven submits that Plaintiff has cited no proof that Oak Haven is an "innkeeper" as defined by Tennessee law. Oak Haven further argues that Plaintiff is misleading the Court regarding Tennessee statutory law. Oak Haven states that the statutory language cited by Plaintiff was stricken and amended by the Tennessee General Assembly in 2007. Oak Haven states that Plaintiff's argument regarding the element of scienter actually supports its Motion for Summary Judgment. Oak Haven asserts that by arguing *Searcy* applies, Plaintiff agrees with Oak Haven that her action is governed under Tennessee Code Annotated § 44-8-413, not the now-abrogated common law upon which she purports to rely. Oak Haven maintains that it is not the owner of the dog and cannot be liable under the statute.

B.      **The Marshalls' Motion for Summary Judgment**

In their Motion for Summary Judgment [Doc. 88], the Marshalls argue that Plaintiff's references and reliance upon the Sevierville Municipal Ordinance should be stricken by the Court because the allegations are outside the scope of the amendment previously allowed by the Court

and should not be permitted pursuant to Federal Rule of Civil Procedure 15. The Marshalls assert that even if the amendment is permitted, the Sevierville Municipal Ordinance conflicts with the more specific Tennessee statute of civil liability for injury caused by dogs, Tennessee Code Annotated § 44-8-413, and further does not provide a private right of action for civil liability for injury caused by dogs. The Marshalls contend that because there is no private right of action under the Sevierville Municipal Ordinance, there can be no cause of action for negligence per se.

The Marshalls further argue that Tennessee Code Annotated § 44-8-413(c)(1) abrogated common law negligence claims for injury caused by dogs, and therefore, any such claims for negligence should be dismissed. In addition, the Marshalls assert that they cannot be held liable for negligence or negligence per se under Tennessee Code Annotated § 44-8-413 because the dog was on the premises with the permission and consent of the owner of the premises and was not running at large. The Marshalls state that because the dog was not running at large, Plaintiff is required to establish that they knew or should have known of the dog's dangerous propensities, which Plaintiff acknowledges she cannot do.

Plaintiff filed an Objection [Doc. 90], asserting that the deadline to file dispositive motions expired on November 15, 2017, and that the Second Amended Scheduling Order issued on February 7, 2018, did not extend the deadline to file dispositive motions. Further, Plaintiff states that the Marshalls' brief does not comply with the Local Rules because it exceeds the twenty-five (25) page limitation. Plaintiff asserts that the Marshalls' Motion should be denied as improper and untimely. Plaintiff continues that the Marshalls filed their Answer to her Second Amended Complaint on March 5, 2018, and failed to raise any procedural or substantive issues, until four months later. Plaintiff states that her Second Amended Complaint was proper and that Defendants

requested that she file it. Plaintiff states that the allegations concerning the Sevierville Municipal Code relate back to the original filing under Federal Rule of Civil Procedure 15(c).

Plaintiff also filed a Response [Doc. 102] to the Marshalls' Motion for Summary Judgment, arguing that the Marshalls are not entitled to summary judgment under Rule 56 because they have failed to show that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Plaintiff argues that the Marshalls are not entitled to summary judgment because the residential exception of Tennessee Code Annotated § 44-8-413 does not apply in this case. Plaintiff asserts that the dog owner is strictly liable if the owner's dog injures a person. Plaintiff states that she was injured on Oak Haven's property, and it is clear that the Oak Haven property is not "residential, farm, or other noncommercial property." She also states that Oak Haven does not own the dog. Plaintiff asserts that Oak Haven is a commercial resort, and therefore, the residential exception cannot apply. Plaintiff states that it is undisputed that Oak Haven knew of the dog's presence and habitual tendency to come onto the property but the question of whether such actions and/or silence rose to the level of permission as contemplated by the statute is a factual question that a jury should decide. Finally, Plaintiff argues that the claims under the Sevierville Municipal Code 10-401 relate back under Rule 15(c). Plaintiff contends that her Second Amended Complaint was filed on February 19, 2018, in compliance with the Court's Order. Plaintiff adds that the Sevierville Municipal Code provides the same prohibition in Tennessee Code Annotated § 44-8-413 and that Defendants will not suffer undue prejudice by allowing this amendment. Plaintiff maintains that the amendment should relate back under Rule 15(c).

The Marshalls filed a Reply [Doc. 109], stating that Oak Haven's property and Cabin 106 is zoned by the City of Sevierville as residential property, and therefore, Tennessee Code Annotated § 44-8-413(c)(1) applies. The Marshalls state that the Court can take judicial notice

that Oak Haven is zoned for residential property under Federal Rule of Civil Procedure 201. The Marshalls assert that although it is undisputed that Plaintiff and her family paid to rent the cabin, Oak Haven's property is not a commercial property but rather a residential-zoned property with cabins available for rental use. The Marshalls continue that because Tennessee Code Annotated § 44-8-413(c)(1) applies, the Court can properly find that the Marshalls' dog was on Oak Haven property with the permission of Oak Haven. Thus, the Marshalls submit that Plaintiff is required to prove that the Marshalls knew or should have known of the dangerous propensities of their dog. Finally, the Marshalls assert that Sevierville Municipal Code 10-401 provides no private right of action and that Plaintiff failed to address their substantive arguments in her Response.

Plaintiff filed a Supplemental Brief [Doc. 110], arguing that Oak Haven is operated as a commercial resort business and is not considered residential property. Plaintiff further asserts that the fact that the property is zoned residential does not mean it is not used as a commercial property.

## III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal*

*Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

IV.     **ANALYSIS**

Before addressing the merits of the issues raised, the Court must address a few preliminary matters. First, both Defendants have requested oral argument on their Motions for Summary Judgment. The Court finds that the filings are sufficient and oral argument is unnecessary. Accordingly, Defendants' requests for oral argument are **DENIED**.

Second, Plaintiff has objected [Docs. 86 and 90] to the timeliness of both Motions, asserting that the deadline to file dispositive motions expired on November 15, 2017. By way of background, the Court held a pretrial conference in this case on February 1, 2018. During the

pretrial conference, the Court inquired as to whether Tennessee Code Annotated §§ 44-8-408 and 413 were applicable to this incident. The Court stated that it would entertain additional briefing as to the applicability of these provisions.[3] The Court, however, did not issue deadlines for such briefs in the Amended Scheduling Order. Accordingly, the Court will not deem Defendants' Motions untimely and Plaintiff's Objections [**Docs. 86 and 90**] are **DENIED**.

Finally, Plaintiff objected to the Marshalls' Motion because it exceeded the page limit permitted under Local Rule 7.1(b). Local Rule 7.1(b) provides that briefs "shall not exceed 25 pages in length unless ordered by the Court." E.D. Tenn. L.R. 7.1(b). While the Court will not deny the Marshalls' Motion for Summary Judgment as improper for exceeding the length permitted, the undersigned **ADMONISHES** the Marshalls for failing to comply with the Local Rule. Any future filings **SHALL** comply with the Local Rules of this Court.

The Court will now turn to the merits of Defendants' Motions.

### A. Oak Haven's Motion for Summary Judgment

Oak Haven asserts that it is not liable for Plaintiff's injury under premises liability. In addition, Oak Haven asserts that Plaintiff has not alleged a violation of Tennessee Code Annotated § 44-8-113 against it and that it cannot be liable under the statute.

The Court will address these arguments in turn.

### 1. Premises Liability

Oak Haven argues that no Tennessee case has ever held that a premises owner is liable for injury caused by a stray dog owned by another that merely wanders onto the premises. Oak Haven

---

[3] The Court observes that Oak Haven's Motion raises similar arguments that were raised in its previous motion for summary judgment with respect to the premises liability claim. Because Plaintiff has had sufficient time to respond to Oak Haven's Motion for Summary Judgment, the Court will consider the parties' arguments raised in the filings.

states that in light of the universal adherent to the requirement of scienter, a Tennessee appellate court would hold that the owner of the premises does not have a duty without knowledge that the dog had a dangerous propensity. Oak Haven argues that it did not regularly keep Bear on its property, so it was not Bear's owner or harborer. Oak Haven further argues that Plaintiff cannot prove Bear was a dangerous condition on the premises. Oak Haven states that no Tennessee case has ever held that an animal is a condition of the property akin to a spilled substance or a cracked sidewalk. Oak Haven explains that an animal is not attached to the land and that it is a living creature capable of independent will and movement. Oak Haven states that Bear never tripped anyone and that at the time of the incident, Bear was lying motionless on the porch.

Plaintiff asserts that Oak Haven's Motion simply relitigates matters raised in its original motion for summary judgment. Plaintiff states that Oak Haven's negligence is not based on its ownership of the dog but rather on the fact that it knowingly allowed the dog to habitually come onto its property and did nothing to remove or prevent the dog from doing so. Plaintiff asserts that the common law has long recognized the special legal relationship between innkeepers and registered guests. Plaintiff argues that Oak Haven was in a special relationship with her and owed her a continuing and affirmative duty to act for her protection. Plaintiff acknowledges that Bear did not attack her or act aggressively towards her. Plaintiff contends, however, that Oak Haven was negligent by knowingly allowing the dog to roam free and unrestricted on its property.

The Court explained the negligence standard in Tennessee in its previous Memorandum and Order. [Doc. 71]. Specifically, to state a claim for negligence, a plaintiff must allege: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). In the context of

negligence based on premises liability, the owner of real property has a duty to exercise reasonable care under all the circumstances to protect guests from unreasonable risks of harm. *Id.* "The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." *Id.* A condition is dangerous if it is reasonably foreseeable that the condition could probably cause harm or injury. *Id.* If injuries of the type that occurred cannot be reasonably foreseen, a duty of care never arises. *See Id.*

Courts have cautioned, however, that the "duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" *Matherne v. West*, No. E201502061COAR3CV, 2016 WL 6311283, at *11 (Tenn. Ct. App. Oct. 28, 2016) (quoting Prosser and Keeton on Torts, § 61). Courts have further explained, "Tennessee case law does not automatically insulate a premises owner from a duty of care or liability simply because the danger was open and obvious." *Id.* at *13.

In the present matter, the Court finds that there are genuine issues of material fact that preclude a finding of summary judgment. Here, there is evidence in the record that Oak Haven allowed Bear to roam on its property. Oak Haven asserts that it does not regularly keep the dog on its property, but this is a question of fact for the jury. When Plaintiff called to report the dog to Oak Haven, Oak Haven instructed her not to feed the dog and that the dog would go away. While Plaintiff did not specifically ask Oak Haven to remove the dog, the Court finds that such facts can be properly submitted to the jury to weigh and consider. Oak Haven asserts that Plaintiff must establish that the dog had a dangerous propensity of which Oak Haven was aware and cites to

several Tennessee decisions holding the same. The Court disagrees with Oak Haven's position because the dog's dangerous propensities are irrelevant in the instant matter. As the Court has previously explained, all parties agree that Bear did not attack Plaintiff or act vicious toward anyone. *See* [Doc. 71 at 10] ("As this Court has already explained, Plaintiff was not bitten or attacked by Bear—she allegedly tripped over Bear. Whether Bear exhibited any dangerous behavior is irrelevant because it was not Bear's behavior that caused the fall, but instead, the mere presence of Bear."). Accordingly, the Court finds Oak Haven's position not well taken.

### 2. Tennessee Code Annotated §§ 44-8-408 and 413

Oak Haven asserts that Plaintiff does not allege in her Second Amended Complaint that it violated any statute or that it had any statutory duty and that Plaintiff brings her claim solely on the common law theory that Oak Haven was negligent as the owner of the premises. Further, Oak Haven asserts that under Tennessee Code Annotated § 44-8-413(a), only owners have a legal duty regarding dogs. Oak Haven states that it is not the "owner" as defined by the statute because it did not regularly harbor, keep, or exercise control over the dog on it premises. Finally, Oak Haven argues that the statute has abrogated common law.

Plaintiff responds that her action is one of premises liability but that in addition to that theory, Oak Haven could also be found liable to her under Tennessee Code Annotated §§ 44-8-408 and 413, if a jury determines that Oak Haven allowed the dog to habitually come onto its property.

As an initial matter, Oak Haven argues that Plaintiff did not allege a statutory violation against it in her Second Amended Complaint. Federal Rule of Civil Procedure 8(a)(2) requires "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "No technical forms of pleading . . . are required." Fed. R. Civ. P. 8(d)(1). The Sixth

Circuit has described that the Rules "contain liberal pleading requirements." *Quinn-Hunt v. Bennett Enterprises, Inc.*, 122 F. App'x 205, 206 (6th Cir. 2005). Further, courts have explained, "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim. Factual allegations alone are what matters." *Id.* at 207 (quoting *Albert v. Carovano,* 851 F.2d 561, 571, n. 3 (2d Cir. 1988)).

Plaintiff does not specifically respond to Oak Haven's argument that she failed to allege statutory violations against Oak Haven in the Second Amended Complaint. Instead, Plaintiff responds that her cause of action is for premises liability but that, in addition to that theory of liability, Oak Haven could also be found liable under Tennessee Code Annotated §§ 44-8-408 and 113. At the pretrial conference, Defendants requested that Plaintiff amend her Amended Complaint to clarify what causes of action were being alleged against each of them. Plaintiff agreed and filed a Second Amended Complaint on February 19, 2018. [Doc. 76]. Plaintiff's Second Amended Complaint alleges the following against Oak Haven:

> 10. Defendant Oak Haven was negligent, as pled in ¶¶ 7-8, by failing to provide sufficient warning of the known presence of the subject dog on the premises, by knowingly allowing the subject dog unfettered access to the subject property, by failing undertake reasonable measures to remove the dog from the subject premises, and by failing to use ordinary care in preventing such hazardous conditions that could result in an injury such as those suffered by the Plaintiff.

[*Id.* at ¶ 10].

Under the Causes of Action, she states, "The Plaintiff has a cause of action against Defendant Oak haven for negligence and all other applicable theories of liability." [*Id.* at ¶ 14]. *See Arnold v. Alphatec Spine, Inc.*, No. 1:13-CV-714, 2014 WL 2896838, at *3 (S.D. Ohio June 26, 2014) (explaining that the purpose of the "short and plain statement" requirement is to *"give the defendant fair notice* of what the . . . claim is and the grounds upon which it rests") (quoting

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554, (2007)) (Emphasis in *Arnold*).  Further, the Second Amended Complaint alleges that the Marshalls violated the specific statutes but does not reference the statutes when referring to Oak Haven.[4]  While the failure to reference statutes is not fatal, the allegations in the Second Amended Complaint do not appear to raise claims against Oak Haven under the Tennessee statutes, especially in light of Plaintiff's agreement to file a Second Amended Complaint to clarify the specific causes of actions against each Defendant.

Further, Tennessee Code Annotated § 44-8-408 provides that the dog's owner, as defined by the statute, commits a criminal offense for allowing the dog to go uncontrolled.  Tenn. Code Ann. § 44-8-408(a)-(b).[5]  Plaintiff has not alleged negligence or negligence per se for violating § 408 in her Second Amended Complaint against Oak Haven, although she makes such assertions against the Marshalls.  In addition, it appears that Oak Haven cannot be found liable under Tennessee Code Annotated § 44-8-413.  Specifically, § 413(e)(1) defines "owner" as follows:

> [A] person who, at the time of the damage caused to another, regularly harbors, keeps, or exercises control over the dog, but does not include a person who, at the time of the damage, is temporarily harboring, keeping, or exercising control over the dog; provided, however, that land ownership alone is not enough to qualify a landowner as a regular harborer even if the landowner gave permission to a third person to keep the dog on the land.

Tenn. Code Ann. § 44-8-413(e)(1).  The parties do not dispute that Bear frequented Oak Haven's property.  Under the statute, however, Oak Haven cannot be liable, despite its alleged assent to Bear's presence on its property, because it is not the "owner" as defined by the statute.

---

[4] Oak Haven also points out that in the pretrial order, Plaintiff states that the Marshalls violated Tennessee Code Annotated §§ 44-8-408 and 413 but does not state that Oak Haven has violated the same.

[5] The Court observes that in her brief, Plaintiff relies on an outdated provision in Tennessee Code Annotated § 44-8-408.

Finally, Oak Haven argues that following the enactment of the statute, there is no common law cause of action for injury caused by a dog in Tennessee. Oak Haven submits that all actions must be brought pursuant to the statute. In *Searcy*, the Tennessee Court of Appeals found that Tennessee Code Annotated § 44-8-413*(c)(1)* abrogated a claim for general negligence. 2017 WL 4743111, at *9. Here, however, Tennessee Code Annotated § 44-8-413, including (c)(1), is not applicable with respect to Oak Haven because it is not the dog's "owner" as defined by the statute. Accordingly, because § 413 does not apply to Oak Haven, the Court finds that the negligence claim may proceed against it.

### C. The Marshalls' Motion for Summary Judgment

The Marshalls assert that the references to and reliance upon the Sevierville Municipal Ordinance should be stricken. The Marshalls state that the common law claims must be dismissed because Tennessee Code Annotated § 44-8-413(c)(1) abrogated the common law. Further, the Marshalls submit that they cannot be liable under § 413. Finally, the Marshalls argue that they cannot be liable under Tennessee Code Annotated § 44-8-408 because Bear was on the premises with the consent and permission of Oak Haven.

The Court will address these arguments separately.

### 1. Sevierville Municipal Ordinance

The Marshalls argue that the references to and reliance upon the Sevierville Municipal Ordinance ("Ordinance") should be stricken because the allegations are outside the scope of the amendment previously permitted by the Court and should not be permitted under Rule 15(c). The Marshalls state that even if the amendment is permitted, the Ordinance conflicts with the more specific Tennessee statute for civil liability, Tennessee Code Annotated § 44-8-413. In addition,

the Marshalls state that the Ordinance does not provide a private right of action for civil liability caused by dogs, and therefore, there cannot be a negligence per se claim based on the Ordinance.

Plaintiff responds that her Second Amended Complaint was filed on February 19, 2018, in compliance with the Court's Order. Plaintiff states that the Ordinance provides the same prohibition as § 413. Plaintiff adds that the Marshalls will not suffer prejudice by allowing this amendment and that the amendment should relate back under Rule 15(c).

In the present matter, Plaintiff filed her Second Amended Complaint after the pretrial conference on February 1, 2018. During the pretrial conference, Defendants requested that Plaintiff amend her Amended Complaint to provide clarity on the theories that she is pursuing against each Defendant. *See* [Doc. 74 at 2]. In addition, Defendants requested that Plaintiff amend the Amended Complaint to remove claims that had been dismissed by the Court. [*Id.*]. Plaintiff agreed that the Amended Complaint should be amended to accurately reflect the claims moving forward. [*Id.*]. Based on the parties' representations at the pretrial conference, it did not appear that Plaintiff would add a new cause of action. In any event, however, the Second Amended Complaint was filed on February 19, 2018, approximately seven months before the trial date. Instead of moving to strike the allegations relating to the Ordinance in a timely manner pursuant to Rule 12(f), the Marshalls filed an Answer and did not raise the issue until it filed the instant Motion for Summary Judgment on July 27, 2018. Accordingly, the Court declines to strike the allegations in the Second Amended Complaint.

The Marshalls also assert that Plaintiff's amendment should not be allowed under Rule 15 on the basis of undue delay, lack of notice, and repeated failure to cure the deficiencies in the Complaint. They claim that these factors prejudice them. While Plaintiff has filed three Complaints in this case, the Court does not find the Marshalls' argument well taken for similar

reasons as explained above. The Second Amended Complaint was filed approximately seven months prior to the trial in this case, and no party brought this issue to the Court's attention until now. As mentioned above, the Marshalls filed an Answer to the Second Amended Complaint without raising any concerns with this new cause of action. Further, the Marshalls have not sufficiently explained how this amendment will cause them to be prejudiced. Accordingly, the Court finds the Marshalls' argument without merit.

Further, the Marshalls argue that the amendment cannot relate back under Rule 15(c), the Ordinance conflicts with state law, and there is no private right of action. Plaintiff's only response is that the Ordinance provides the same prohibition as § 413, Defendants will not suffer prejudice, and the amendment should relate back under Rule 15(c). Plaintiff does not respond to the Marshalls' argument regarding whether there is a private right of action under this Ordinance. Because Plaintiff did not respond to this argument, the Court finds that Plaintiff has waived her argument. *See Guster v. Hamilton Cnty Dep't of Educ.,* No. 1:02-cv-145, 2004 WL 1854181, *7 (E.D. Tenn. Mar. 2, 2004) (holding that an argument not addressed in a responding party's brief is deemed waived); *Kelsay v. Hamilton Cnty,* No. 1:02-cv-054, 2003 WL 23721334, *4 (E.D. Tenn. Dec. 9, 2003) (explaining that the plaintiff waived opposition to the dismissal of a claim for failing to discuss it in his response). Further, while the amendment relates back under Rule 15(c) because it asserts a claim "that arose out of the conduct" set out in the original pleading, *see* Fed. R. Civ. P. 15(c)(1)(B), the Court agrees with the Marshalls that the Ordinance does not create a private cause of action. *See Gillespie v. City of Memphis*, No. W200701786COAR3CV, 2008 WL 2331027, at *9 (Tenn. Ct. App. June 5, 2008) ("As a result, the burden of proving the existence of a private right of action lies with the plaintiff.") (quoting *Johnson v. City of Memphis,* Nos. 00-2608 DP, 2006 WL 3827481, at *17-18 (W.D. Tenn. Dec. 28, 2006)). The Ordinance states that

it is unlawful for a dog's owner to allow the dog to run at large, and it punishes each violation with a civil penalty of not more than $50.00. *See* [Doc. 89 at 22-23]. The Ordinance does not explicitly provide for a private right of action, and without any argument to the contrary, the Court finds Plaintiff's claims based on the Ordinance, including the negligence per se claim, are **DISMISSED.**

### 2. Common Law Claims of Negligence

The Marshalls assert that Tennessee Code Annotated § 44-8-413 abrogated claims based on common law negligence, citing the Tennessee Court of Appeals' decision in *Searcy*. The Marshalls continue that although *Searcy* only analyzed the application of Tennessee Code Annotated § 44-8-413(c)(1), because the dog was on the dog's owners' premises, the entire statute when read as a whole clearly abrogates the common law liability for injury caused by dogs. The Marshalls state that in particular, the common law required knowledge or scienter on the part of the dog owner but that § 413(a)(1) and (2) remove that requirement for dog owners who are either unable to keep the dog under reasonable control or allow the dog to run at large. The Marshalls assert that when read as a whole, the statute abrogates the common law for liability for injury caused by dogs.

Although Plaintiff discusses the court's holding in *Searcy* in detail, she does not respond to the Marshalls' argument that § 413 abrogated all common law claims. Despite Plaintiff's lack of response, the Court finds that the Marshalls have not established that § 413 abrogated all common law claims. As the Marshalls correctly note, *Searcy* specifically held that § 413(c)(1) abrogated common law claims falling within its parameters. 2017 WL 474311, at *6. *Searcy* did not hold that § 413 abrogated the common law for liability for injury caused by dogs, and the Marshalls have not sufficiently argued otherwise. Accordingly, the Marshalls' position is not well taken.

### 3.      Liability Pursuant to Tennessee Code Annotated § 44-8-413

The Marshalls assert that it cannot be held liable for negligence or negligence per se under Tennessee Code Annotated § 44-8-413 because the dog was not "running at large" within the meaning of the statute.  In addition, the Marshalls assert that because the dog was not running at large, the residential exception applies, meaning that Plaintiff is required to establish that the Marshalls knew or should have known of the dog's dangerous propensities.

Plaintiff responds that the residential exception in § 413(c)(1) does not apply in this case. Plaintiff argues that she was not on the Marshalls' property when injured, and therefore, the residential exception does not apply.  In addition, Plaintiff asserts that the injury occurred on commercial property and that whether Oak Haven gave permission for the dog to be on the property is a question of fact for the jury.

In its Reply, the Marshalls submit a Zoning Map from the City of Sevierville, showing that Oak Haven's property is not zoned as commercial property but instead zoned as follows: "MDR: Medium Density Residential" and "LRD: Low Density Residential."  The Marshalls assert that because the property is zoned as residential, the residential exception applies and Plaintiff cannot establish the dog's dangerous propensities.  Plaintiff filed a Supplemental Brief asserting that Oak Haven is operated as a commercial resort and is not considered residential property.  Plaintiff argues that the fact that the property is zoned as residential does not mean it is not used as a commercial property.

Tennessee Code Annotated § 44-8-413, in relevant part, provides as follows:

> (a)(1) The owner of a dog has a duty to keep that dog under reasonable control at all times, *and* to keep that dog from running at large. A person who breaches that duty is subject to civil liability for any damages suffered by a person who is injured by the dog while in a public place or lawfully in or on the private property of another.

> (2) The owner may be held liable regardless of whether the dog has shown any dangerous propensities or whether the dog's owner knew or should have known of the dog's dangerous propensities.

Tenn. Code Ann. § 44-8-413(a)(1)-(2) (Emphasis added).  The residential exception provides as follows:

> (c)(1) If a dog causes damage to a person while the person is on residential, farm or other noncommercial property, and the dog's owner is the owner of the property, or is on the property by permission of the owner or as a lawful tenant or lessee, in any civil action based upon such damages brought against the owner of the dog, the claimant shall be required to establish that the dog's owner knew or should have known of the dog's dangerous propensities.
>
> (2) The element of proof required by subdivision (c)(1) shall be in addition to any other elements the claimant may be required to prove in order to establish a claim under the prevailing Tennessee law of premises liability or comparative fault.

Tenn. Code Ann. § 44-8-413(c)(1)-(2). .

In the present matter, the primary dispute between the parties is whether the residential exception pursuant to § 413(c)(1) is applicable.  The Court finds that it is not.  Under § 413(c)(1), the injury must occur on "residential, farm, or other noncommercial property."  The injury occurred on Oak Haven's property—a resort.  The Marshalls assert that the property is zoned for residential use, but the Court finds, in this instance, the zoning is irrelevant.  Instead, the Court finds the use of the property is pertinent for purposes of the statute and not how the property is zoned.  There does not appear to be a dispute that Oak Haven is in the business of renting cabins to guests.  Accordingly, the Court finds that § 413(c)(1) is inapplicable as to the Marshalls.

Further, after considering the parties' other arguments, the Court finds that there are geninune issues of material fact as to whether the dog was "running at large" within the meaning of the statute.  The jury should hear the testimony to determine whether Oak Haven gave permission for Bear to be on the premises.  Thus, the Court agrees with Plaintiff that the question

of whether Oak Haven's actions and/or silence rose to the level of permission as contemplated by the statute is a factual question for the jury to decide. Further, as emphasized above, the Marshalls have two obligations under the statute: (1) a duty to keep the dog under reasonable control at all times, and (2) to keep that dog from running at large. Tenn. Code Ann. § 44-8-413(a)(1). Accordingly, the Court finds that Plaintiff's claim pursuant to Tennessee Code Annotated § 44-8-413 against the Marshalls may proceed to trial.

### 4. Liability under Tennessee Code Annotated § 44-8-408

The Marshalls argue that they cannot be liable for negligence per se under § 408 because the dog was on the premises of Oak Haven with the consent and permission of Oak Haven—the owner of the premises. Plaintiff does not respond to this argument. Although Plaintiff fails to respond to this argument, the Court finds that there are genuine issues of material fact as to whether Oak Haven consented to Bear's presence on the property. As mentioned above, the question of whether Oak Haven's actions and/or silence rose to the level of permission as contemplated by the statute is a factual question for the jury to decide. Accordingly, the Court finds the Marshalls' argument not well taken.

## V.       CONCLUSION

Accordingly for the reasons explained above, the Court finds Defendant Oak Haven Resort, Inc.'s Motion for Summary Judgment as to Second Amended Complaint [**Doc. 82**] and Steven Marshall and Betty Marshall's Motion for Summary Judgment as to Plaintiff's Second Amended Complaint [**Doc. 88**] to be **GRANTED IN PART AND DENIED IN PART.**  The Court further **DENIES** Plaintiff's Objection to Steven and Betty Marshall's Motion for Summary Judgment [**Doc. 90**].

**IT IS SO ORDERED.**

ENTER:

United States Magistrate Judge